RUTH M. JENSEN, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JULY 13, 1934. No. 28971.

*Kennedy, Holland & De Lacy* and *E. J. Shoemaker*, for appellant.

*Frost, Hammes & Nimtz* and *Frederick L. Wolff, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and RAPER and TEWELL, District Judges.

RAPER, District Judge.

The plaintiff, Ruth M. Jensen, appellee, bases her right of action upon the allegations that the defendant, Omaha & Council Bluffs Street Railway Company, a corporation, appellant, prior to July 17, 1932, had maintained a pole, about 14 inches in diameter, between the curb and sidewalk on the east side of Twenty-second street a few feet north of the intersection of said street and sidewalk with the paving on Burt street in Omaha, and that at some period before that date the defendant removed the pole and negligently permitted the hole, about 23 inches deep and 14 inches in diameter, thereby made to remain open and uncovered, which hole became obscured by growing

vegetation, and plaintiff being unaware of said hole, without fault on her part, stepped into said hole on July 17, 1932, and sustained severe injuries. The defendant answered by general denial. The cause was tried to a jury and verdict returned for plaintiff. The defendant appeals, relying principally upon four alleged errors: First, that the evidence is not sufficient to sustain the verdict; second, that the verdict is so grossly excessive as to show it was the result of passion and prejudice; third, that the court erred in giving instruction No. 3; fourth, that the court erred in admitting improper and prejudicial evidence offered by plaintiff in rebuttal.

As to the first proposition, it is admitted that the defendant company, in the summer of 1925, removed its tracks and poles from Twenty-second street and Burt street near the scene of plaintiff's accident. It is plaintiff's claim that, in removing its lines, it took up the pole at the place in question and neglected to fill the hole where the pole stood. The defendant contends that it never had a pole at that place and never removed any pole at that place, and it is further the contention of defendant that there was not sufficient evidence introduced to sustain a finding that the hole into which plaintiff stepped resulted from the removal of a pole by defendant in 1925.

The plaintiff called only two witnesses who attempted to fix definitely the location of the pole which resulted in leaving the hole. Mr. Richards testified he had lived on Burt street since 1920 (he does not state how near he lived to the place in question) ; that he is a night watchman and works from 5:30 in the evening until 5 in the morning; that the defendant company removed its tracks and poles at Twenty-second and Burt streets about 1925; that there were red poles on each side of the street that supported the trolleys; that there was a pole on the northeast corner of Twenty-second and Burt streets, and that the pole was taken away by men using equipment upon which appeared the name Omaha Street Railway Company. He was then asked this question: "Mr. Richards, do you

know whether or not the hole, after the pole was removed on the northeast corner of Twenty-second and Burt streets, was ever filled?" To which he answered: "It was filled after the lady got hurt." "Q. How long has that hole been there, if you know? A. It has been there ever since they took the pole down until the lady got hurt."

Mr. Harry B. Symes, who has lived at the southwest corner of the intersection of Twenty-second and Burt streets since 1905, and is in the fuel business, was asked if he knew where the hole in controversy was, and answered, "Yes." Then was asked: "Do you know whether there was ever a post in it? A. Yes. Q. If you can, please tell, just tell where it was and what it was, just describe the post. A. Well, it was a red post, it was not as tall as some of the larger poles are, just to hold the guy wires over the top." He further stated that the post was used to hold the wires in position on the turn; that is, this was close to the turn there and it served to complete that turn and hold the wires in position, and the wire from the pole was attached to the trolley line. He did not know what became of that particular pole; the post was removed about eight years ago; he saw gangs removing the poles but did not watch all of the poles being removed. Then he was asked: "Was the pole that stood where the hole in controversy was located removed at the same time as you described? A. They were removed, but I did not watch any particular one being pulled out at any time, but I know they were all taken away." He did not notice the hole until later. On cross-examination he stated he could not give the exact location of the pole nor the distance from either curb; that there is a Nebraska Power Company pole there now, and that pole has been changed.

It was definitely proved by the evidence that the hole in question was 36 feet north of the north curb of Burt street on the east side of Twenty-second street in the parking. The Nebraska Power Company's pole is 24 feet north of the north curb of Burt street, and the hole was 2 feet north of this pole. Defendant's proof shows that the only

pole they removed in that particular locality was 50 feet north of the north curb of Burt street. Mr. Jacoby, superintendent of the electric lines department of the defendant company, testified that the company kept a permanent record of the location of their poles over the entire system and a map was received which had been made in 1910 and had been kept up ever since; that he has been in the employ of the defendant since July, 1911. This map, as he pointed out, showed that the only pole of the company at the place in question was located approximately 50 feet north of the corner on the east side of Twenty-second street (this pole was designated on the map as pole 136), and that there had been no other pole in that location since 1910, as far as the record shows and to his personal knowledge since he has been with the line department. He further testified that the pole the company removed was wood, and unpainted; that the company painted only iron posts red. Mr. Woodworth, line foreman of the defendant company, testified that from the map and from his recollection there were no other poles of defendant at the intersection of Burt and Twenty-second streets except the one numbered 136. There is some other testimony referring to the location of the pole, but it is so indefinite as to be valueless. Mr. Symes comes nearer giving a definite location of the pole that was removed than any of the plaintiff's witnesses, but he is not very definite. This case was tried in April, 1933, nearly eight years after the company's tracks and poles were removed. After careful consideration of all the testimony bearing on that question, we feel that there is not sufficient evidence to show that the hole in question was left by the defendant when its tracks and poles were removed, and this results from the lack of plaintiff's evidence rather than from the testimony of defendant's witnesses.

The second assignment, that the verdict is so excessive as to show that the verdict was the result of passion and prejudice, will not be further referred to inasmuch as the case is to be reversed. It is well, however, to state that,

under the evidence, the verdict seems large. The evidence as to plaintiff's future suffering and loss of earnings is not very definite.

Instruction No. 3 gives the measure of damages for loss of earnings and for pain and suffering. The instruction stated that, if the jury found for plaintiff, they should award her such damages as will adequately compensate her for her injuries received and which she has proved and established by a preponderance of the evidence, and goes on to state that the jury should "award her such sum as will adequately compensate her for such time lost as a beautician, and which she has shown by a preponderance of the evidence that in all probability she would have earned had she not received her said injuries," and further it is stated that she should be awarded compensation for her pain and suffering endured, "and that it is reasonably established will in all probability be endured by her as a result of her said injuries." Similar language was used in an instruction as to probable future damages, in *Burkamp v. Roberts Sanitary Dairy*, 117 Neb. 60, and was held to be erroneous. The court said: "This was error in so far as it permitted the jury to allow damages for pain which the plaintiff will 'probably suffer in the future.' This language is too indefinite and conjectural. The only future pain and suffering which the jury is entitled to consider is such as the evidence shows with reasonable certainty he will experience."

In *Chicago, R. I. & P. R. Co. v. McDowell*, 66 Neb. 170, this rule is laid down: "In an action for personal injuries compensation can be recovered for only such future damages as are shown with reasonable certainty to be consequent thereon."

After the defendant had rested its case, the plaintiff offered in rebuttal a witness who had during that day made observations as to the location of certain poles at Twenty-second and Cuming streets, Twenty-second and Izzard streets, and Sixteenth and Webster streets. The purport of his testimony was to show that at those places

defendant's poles were set closer together and to the street corners than defendant's witness, Jacoby, had testified about the location of their poles at Twenty-second and Burt streets, the place in question. There was no showing that the construction of defendant's line at those places was the same as defendant had employed in 1925, nor that such places were similar to the place in question, nor was such testimony in rebuttal of defendant's testimony. It does not seem that such testimony was admissible under any theory. The purpose was to give the jury to understand that, because the company eight years later had some poles closer together and nearer the corner at other places on their line than defendant claimed at the place in question, therefore defendant's pole that had been removed must have been closer to the corner than defendant's witnesses had stated. Clearly it was not proper rebuttal evidence and was prejudicial.

Because of the errors above stated, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.